IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
_____

| | |
|---|---|
| Unitherm Food Systems, Inc., | Court File No. 14-cv-04034 (JNE/BRT) |
| Plaintiff, | |
| v. | |
| Hormel Foods Corporation and Hormel Foods Corporate Services, LLC, | **PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL** |
| Defendants. | |

_____

## I.  INTRODUCTION

This motion is necessary because Defendants have refused to present Hormel's President and Chief Executive Officer (CEO), Jeffrey M. Ettinger, for deposition. This is so even though Mr. Ettinger has unique, first-hand knowledge of relevant facts.

Unitherm has offered to limit the deposition to two hours, and to allow it to occur at the offices of Hormel's legal counsel.  This deposition is necessary, and Hormel's refusal to present Mr. Ettinger is unwarranted and contrary to law.  The "apex doctrine" does not shield Mr. Ettinger from testifying. The Court should therefore compel his deposition.

## II.  RELEVANT BACKGROUND

In order to understand Mr. Ettinger's role with respect to Unitherm and the bacon project at issue, it is important to clarify his connection with Unitherm. Unitherm and Hormel's relationship existed long before the bacon project at issue in this litigation. In

the early 2000s, Unitherm and Jennie-O Foods, a subsidiary of Hormel, were co-plaintiffs in a litigation against Swift-Eckrich d/b/a Conagra over a patented process relating to the browning of precooked meat products. During this litigation, Mr. Ettinger served as the President of Jennie-O. Unitherm and Jennie-O ultimately prevailed, and a strong business relationship formed between Unitherm and Mr. Ettinger. From this point forward, a particular collegiality existed between Unitherm and Hormel based upon the relationship and trust between Mr. Howard and Mr. Ettinger. The parties repeatedly made reference to the fact that they were "all honorable men" within the industry, and this experience established Unitherm's trust in Hormel. (*See, e.g.*, Bradford Dec., Ex. 1).[1] It is this relationship and trust with Hormel and the collegiality with Mr. Ettinger that provided the backdrop for Unitherm's decision to enter into a Joint Development Agreement ("JDA") with Hormel for the Unitherm Process.

### A.     Facts Illustrating Mr. Ettinger's involvement in the bacon cooking project.

Mr. Ettinger was directly involved in the bacon project at issue in this litigation. The following facts provide a timeline of Mr. Ettinger's involvement in Hormel's bacon cooking endeavors, including his dealings with Unitherm and later with JBT, which demonstrate his personal knowledge that is highly relevant to the issues in this case. Mr. Ettinger's involvement spanned from 2008 through 2014.

---

[1] "Bradford Dec." refers to the Declaration of Mark Bradford in Support of Plaintiff's Motion to Compel.

1.     Involvement during the Unitherm/Hormel JDA

On July 30, 2008, Unitherm requested an update from Hormel regarding the joint project. Larry Pfeil of Hormel responded that they were simply waiting on Jeff Ettinger for final approval. (Bradford Dec., Ex. 2). The final decision for the appropriation of the bacon project rested solely within the control of Mr. Ettinger. Hormel employees have indicated that approval of such requests are not "a rubber stamp." (*See, e.g.* Bradford Dec., Ex. 3, at 42:13-23). Therefore, based upon a detailed review of the project in 2008, Mr. Ettinger gave his final approval and Unitherm and Hormel's joint development project went forward.

In 2008, Mr. Ettinger also personally approved a request for the rental and installation of the Unitherm spiral oven to perform tests to improve Hormel's precooked bacon. (Bradford Dec., Ex. 4). This request specifically noted the importance of Hormel continuing to work with Unitherm to prevent Unitherm from going to competitors, such as Kraft and Cargill, with the process. *Id.*

On August 20, 2009, Hormel R&D asked to extend the rental of the Unitherm spiral oven for another six months. (Bradford Dec., Ex. 5). In the pertinent email correspondence, Hormel R&D (represented by James Schroeder) defined the rental fees as well as the purchase price. As a response to this request, the Hormel Refrigerated Foods division replied that additional testing was unnecessary and that it would not support any further funding. Phillip Minerich, Vice President of Research and Development, reached out to Mr. Ettinger for his direct input regarding the Unitherm spiral oven and Hormel's fear that it could negatively impact Hormel's microwave oven

3

line. In short order, Mr. Ettinger responded, suggesting they meet to discuss the issue. Mr. Ettinger stated that the Unitherm project seemed to be in a "never-land," questioning the value of the Unitherm spiral oven. Mr. Ettinger's email further suggested that he understood that the Unitherm oven was no longer being used for the bacon project and was being redirected for another purpose. Notably, as the evidence in this shows, this was a mistaken belief.[2] Ultimately, Mr. Ettinger was convinced otherwise as Hormel continued to lease the Unitherm spiral oven, and eventually purchased the oven in September 2010. However, no documents or witnesses have been provided to clarify or explain Mr. Ettinger's change in position.

2.  <u>Involvement after Hormel's improper termination of the Unitherm/Hormel JDA</u>

On May 6, 2011, Hormel personnel met to discuss "Project TenderMade." (Bradford Dec., Ex. 9). As a part of their discussions, they reviewed the budget proposal for the Osceola Plant Hybrid Oven System. Evidence shows that the Unitherm spiral oven was a part of the Osceola Plant Hybrid Oven System in 2011. (*See* Bradford Dec., Ex. 10, at 47:5-48:5; 85:10-14; 86:10-16; 88:5-8; 166:7-24; 177:13-19). During this May 2011 timeframe, Steven Binder, Vice President of Hormel, was meeting with Mr. Ettinger with a budget proposal. At the meeting with Mr. Ettinger, the budget was approved. (Bradford Dec., Ex. 9). Mr. Ettinger held the sole authority to approve or deny this request. As Bill Dion noted in his deposition, budgets over 15 million, which

---

[2] Multiple documents prove that Hormel was using the Unitherm oven to make precooked bacon slices long after the April 1, 2010 termination, and in fact had a competing manufacturer "duplicate" the Unitherm oven operation in 2012, contrary to the parties' agreement. For example, *see* Bradford Dec., Exs. 6, 7, 8.

4

includes the Osceola line, must be approved by Mr. Ettinger or the board. (*See* Bradford Dec., Ex. 3, at 42:13-43:18). Such approval is not a "rubber stamp" and the May 2011 documents show that Mr. Binder was seeking approval from Mr. Ettinger. Therefore, Mr. Ettinger alone played the most direct role in the approval of the Osceola Plant Test Hybrid Oven System which is a major factual issue in this action.

In January 2013, Hormel notified JBT that approval for the project to use the JBT "GCO" oven was awaiting a decision from the board. (*See* Bradford Dec., Ex. 11). On March 25, 2014, JBT was in talks with Hormel regarding the bacon project. JBT specifically noted that Hormel's CEO was involved, and was committed to the Bacon1 project. During this time, Hormel was keenly aware that JBT's oven was only operating at 25 percent (25%) capacity and was failing to meet Hormel's expectations. (Bradford Dec., Ex. 12). Therefore, not only was Mr. Ettinger directly involved in the JDA between Unitherm and Hormel, he was also directly involved in the bacon cooking project with JBT.

In the summer of 2014, Unitherm learned of Bacon1 and began to have serious concerns regarding the manner in which Hormel was producing its precooked bacon. To address the matter, Unitherm began to correspond with Hormel, including directly with Mr. Ettinger, to ascertain information relating to the process Hormel was using and to confirm its belief that Hormel was using the Unitherm Process. In response to Unitherm's letters, Mr. Ettinger personally responded on August 20, 2014. (*See* Bradford Dec., Ex. 13). While Mr. Ettinger did allegedly defer to technical and legal experts (for which he provided no identification) to answer some of Unitherm's questions, he squarely

5

presented Hormel's position on issues at the heart of this litigation. Mr. Ettinger stated that Hormel's R&D team had determined that precooked bacon could be made with any spiral oven, but it was not superior to the conventional microwave oven. Mr. Ettinger elaborated that the bacon made in a spiral oven "developed an off flavor." He concluded that after two years of development, Hormel could not resolve these issues and discontinued its work with Unitherm. Mr. Ettinger further stated that Hormel had developed a unique process involving a microwave paired with a spiral oven, and had not incorporated any of Unitherm's confidential information. *Id*. Mr. Ettinger's letter was an attempt to dissuade Unitherm from seeking further action, and was on its face presented based upon his personal knowledge of the situation.

      **B.**    **Facts surrounding Unitherm's attempts to ascertain Mr. Ettinger's knowledge through other means of discovery.**

Throughout discovery, Unitherm sought to understand Mr. Ettinger's knowledge and involvement relevant to this action through the depositions of other Hormel officers and employees, as well as written discovery requests. In attempting to understand Mr. Ettinger's August 20, 2014 letter, Plaintiff's counsel questioned Lori Marco, Hormel's general counsel. Ms. Marco specifically testified that she was aware that Mr. Ettinger wrote the letter, but was unaware of his involvement in the bacon project. (*See* Bradford Dec., Ex. 14, at 61:20-62:9). She further noted that Mr. Ettinger would likely be involved in the routing for approval of the appropriations for the project, but she was unaware of his specific involvement and the facts surrounding the August 20, 2014 letter. *Id.* Ms. Marco further testified that Mr. Ettinger reviewed her July 9, 2014 letter, wherein

Hormel asserted that the "Unitherm Process" did not produce precooked bacon that was "materially 'better'" than the original product. (*Id.* at 14:9-16:5; *See also* Bradford Dec., Ex. 15). Essentially, Ms. Marco's deposition confirmed that Mr. Ettinger was involved in the 2014 communications with Mr. Howard and Unitherm, but offered no insight into his knowledge when he wrote the August 2014 letter asserting Hormel's position.

Unitherm also tried additional, less intrusive means of discovery to obtain information regarding Mr. Ettinger's knowledge. Unitherm issued Request for Admission No. 29 requesting that Hormel admit the position written by Mr. Ettinger on August 20, 2014 represented Hormel's position in this litigation. Hormel responded by denying that Mr. Ettinger's letter represented the company's position. (Bradford Dec., Ex. 16). Unitherm sought further clarification of Mr. Ettinger's August 20, 2014 letter through written discovery by specifically requesting in Interrogatory No. 17 that Hormel identify "subject matter experts" referenced by Mr. Ettinger. Hormel responded by simply stating that Mr. Ettinger "did not specifically refer to named individuals as 'subject matter experts' pertaining to technical and legal issues, but was referring in general to Hormel's engineers (including R&D personnel) and patent counsel, specifically Lori Marco." (Bradford Dec., Ex. 17).

From the outset of litigation, Defendants have been aware that Unitherm found Mr. Ettinger's knowledge and his August 20, 2014 letter to be of relevance in understanding the facts at issue. On February 26, 2015, Unitherm notified Hormel that Mr. Ettinger was considered a key fact witness as to both liability and damages, requesting that Hormel be mindful of his schedule. (*See* Bradford Dec., Ex. 18). On

7

March 27, 2015, Unitherm designated Mr. Ettinger as a custodian for an ESI search. (*See* Bradford Dec., Ex. 19). On June 4, 2015, Unitherm first noticed Mr. Ettinger for deposition to be held on August 4, 2015. (Bradford Dec., Ex. 20). On September 15, 2015, Plaintiff provided Hormel with its Amended Notice to Take Deposition of Jeff Ettinger on October 27, 2015. (Bradford Dec., Ex. 21).  On this same date, Plaintiff clarified that it requested only a two-hour deposition of Mr. Ettinger to occur at defense counsel's office in Minnesota in order to minimize the burden to Hormel and Mr. Ettinger. (Bradford Dec., Ex. 22).  Hormel was put on notice as to Unitherm's belief that Mr. Ettinger had direct and substantive knowledge as to the issues in this matter. Hormel had ample opportunity to clarify Mr. Ettinger's knowledge in a less intrusive form of discovery, and yet failed to do so.  Therefore, given Mr. Ettinger's personal knowledge on the bacon cooking project and Plaintiff's unsuccessful attempts to ascertain the information through less intrusive methods of discovery, this Court should compel the deposition of Mr. Ettinger.

## II.   ARGUMENT

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the claim or defense of any party." Relevant information need not be admissible at the trial "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* Rule 30(a)(1) further provides that "[a] party may, by oral questions, depose any person including a party without leave of court." Generally, the discovery rules should be given broad, liberal interpretation. *Edgar v. Finley*, 312 F.2d 533, 535 (8th Cir. 1963).

8

When considering whether to allow the deposition of high-level corporate executives, the general rule in Minnesota is "there is no *per se* rule barring the deposition of top corporate executives." *Bombardier Rec. Prods. v. Arctic Cat, Inc.*, 2014 U.S. Dist. LEXIS 157957, at *6 (D. Minn. Sept. 24, 2014). However, Minnesota does provide senior executives special consideration and the deposition of an executive will generally not be permitted when the deposing party fails to establish that the executive has some unique knowledge that is relevant to the case. *Id.* (citing *Cardenas v. Prudential Ins. Co. of Am.*, 2003 U.S. Dist. LEXIS 9510, at *1 (D. Minn. May 16, 2003)). Given this "special consideration," Minnesota courts apply the "apex doctrine" when a party seeks to depose a high-level corporate executive. "The apex deposition rule is 'aimed to prevent the high level official deposition that is sought simply because he is the CEO or agency head – the top official, not because of any special knowledge of, or involvement in, the matter in dispute." *EEOC v. JBS USA, LLC*, 2012 U.S. Dist. LEXIS 154791, at *6 (D. Neb. Oct. 29, 2012). The rule is intended to protect busy, high-level executives who lack unique or personal knowledge, and is "bottomed" on the apex executive lacking any knowledge of relevant facts. *Id.*

In determining whether to allow the deposition of a corporate executive, the court considers two factors: (1) whether the deponent has unique first-hand knowledge of the facts at issue in the case; and (2) whether other less burdensome avenues for obtaining the information sought have been exhausted. *Bombardier, supra*, at *7 (citing *Apple Inc. v. Samsung Electronics Co., Ltd.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012); *City of Farmington Hills Emple. Ret. Sys. v. Wells Fargo Bank, N.A.*, 2012 U.S. Dist. LEXIS

9

190633, at *10 (D. Minn. Sept. 17, 2012), aff'd 2012 U.S. Dist. LEXIS 161041 (D. Minn. Nov. 9, 2012). It is unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such action could be reversible error. *Bombardier, supra. See also Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979). Therefore, "[w]hen a witness has personal knowledge of facts relevant to the lawsuit, even a corporate president or CEO is subject to deposition." *Bombardier, supra.* Moreover, "[a] claimed lack of knowledge, by itself it is insufficient to preclude a deposition." *Id.*

Here, Hormel cannot claim protection under the apex doctrine to prevent the deposition of Mr. Ettinger simply because he is the President and CEO of Hormel. In fact, given Mr. Ettinger's unique first-hand knowledge, his correspondence with Unitherm, and Unitherm's exhaustion of other discovery options, Minnesota law supports Unitherm's request for Mr. Ettinger's deposition.  This Court should compel the deposition.

### A. Mr. Ettinger has unique first-hand knowledge of the facts at issue in this case.

Hormel cannot avoid the deposition of Jeff Ettinger because he has significant, unique, first-hand knowledge of facts relevant to the case. This satisfies the first prong of the "apex doctrine," as Unitherm must show that Mr. Ettinger has "unique first-hand, non-repetitive knowledge." *Bombardier, supra*, at *8.  Moreover, a claimed lack of knowledge alone is insufficient to preclude Mr. Ettinger's deposition. *See Bombardier supra*, at * 7.

10

In this litigation, Mr. Ettinger's knowledge is not limited merely to his executive role at Hormel. During the course of the JDA, Mr. Ettinger alone ordered final approval on the Unitherm/Hormel joint development efforts. As Larry Pfeil's 2008 email stated, the continuation of the JDA project rested solely on the approval of Mr. Ettinger. Such a decision was not "a rubber stamp," but instead required Mr. Ettinger to analyze the value of the project to the company. Ultimately, Mr. Ettinger determined that the project was of value, and approved the project. Moreover, when Hormel considered whether to continue to rent the Unitherm spiral oven at certain times, Mr. Ettinger provided direct commentary again assessing the value of the Unitherm spiral oven as to Hormel's overall goals with the bacon project.

Evidence shows that while Mr. Ettinger first questioned the value of continuing to lease the oven, he ultimately approved the project. However, no documents provide insight as to why he changed his mind and decided that the Unitherm spiral oven was of significant value to the point that Hormel purchased it more than a year later. Further, no other deponents have been able to testify regarding the basis for Mr. Ettinger's decision. Only Mr. Ettinger can testify regarding his own decisions to approve and provide funding for the project. Moreover, only Mr. Ettinger can testify as to his 2009 decision to continue to lease the Unitherm spiral oven. Unitherm is entitled to question Mr. Ettinger regarding the facts and circumstances that shaped his decisions, as they are important to the facts of the case and cannot be obtained by other means. No other Hormel employee can testify as to Mr. Ettinger's decision making during this 2008 and 2009 timeframe.

Following the termination of the JDA, Mr. Ettinger remained involved in the bacon cooking project. He was involved in the budget proposals for the Osceola plant, which included the Unitherm spiral oven. In 2013, Mr. Ettinger was involved in budget proposals and discussions with JBT. In 2014, Mr. Ettinger personally responded to Unitherm's concerns that Hormel was using the Unitherm Process to cook bacon and encouraged mediation. The letter stated Hormel's position in August 2014, and provided specific factual assertions, which are now in dispute. Unitherm is entitled to question Mr. Ettinger regarding the facts that undergird his assertions of Hormel's position at that time, particularly in light of documentation and evidence that appear to be contrary to his assertions. Ultimately, Mr. Ettinger possesses a great deal of unique, first-hand knowledge on the basis for Hormel's decision to terminate the JDA. He claimed that Hormel's current process was unique and did not incorporate any of the "Unitherm Process." Given Mr. Ettinger's involvement in the bacon cooking project, his understanding of Hormel's termination of the JDA and his authorship of numerous communications, Unitherm is entitled to depose Mr. Ettinger regarding these facts.

### B. Unitherm has exhausted less intrusive discovery methods.

The second prong of the "apex doctrine" requires the moving party to first use other forms of discovery, such as interrogatories and depositions of other employees who have more direct knowledge of the facts, before deposing the corporate executive. *Sellers v. Deere & Co.*, 2014 U.S. Dist. LEXIS 17900 (N.D. Iowa February 5, 2014); *Bicek v. C&S Wholesale Grocers, Inc.*, 2013 U.S. Dist. LEXIS 139897 (E.D. Cal. Sept. 27, 2013).

Unitherm has done this, but has not been able to obtain the information now sought through Mr. Ettinger's deposition.

Unitherm deposed Lori Marco, Hormel's general counsel, in an attempt to gain greater understanding of Mr. Ettinger's position in his August 20, 2014 letter. Ms. Marco specifically testified that she was aware that Mr. Ettinger wrote the August 20, 2014 letter, but was unaware of his involvement in the bacon project. (*See* Bradford Dec., Ex. 14, at 61:20-62:9). She further noted that Mr. Ettinger would likely be involved in the routing for approval of the appropriations for the project, but she was unaware of his specific involvement or the facts surrounding the August 20, 2014 letter. (*Id.*) Ms. Marco further testified that Mr. Ettinger reviewed her July 9, 2014 letter, wherein Hormel asserted that the "Unitherm Process" did not produce pre-cooked bacon that was "materially 'better'" than the original product. (*Id.* at 14:9-16:5; *see also* Bradford Dec., Ex. 15). However, she could offer no more insight. Essentially, Ms. Marco's deposition only served to prove that Mr. Ettinger was keenly aware of the facts occurring in the summer of 2014, but provided **no other information** to help explain Mr. Ettinger's basis for the company position.

Unitherm also issued written discovery regarding these issues. Unitherm's Request for Admission No. 29 and Interrogatory No. 17 sought further clarification as to Mr. Ettinger's August 20, 2014 letter. In Request for Admission No. 29, Unitherm requested that Hormel admit that Mr. Ettinger's August 20, 2014 letter reflected Hormel's position in this litigation. Hormel denied this Request. In Interrogatory No. 17, Unitherm asked Hormel to identify the "subject matter experts" Mr. Ettinger references

13

in his letter. Specific identification would allow Unitherm to take the deposition of the individuals that spoke with Mr. Ettinger's, and helped develop Hormel's position contained in the August 20 letter. Hormel replied stating that Ettinger was referring generally to Hormel engineers and the R&D personnel for the scientific aspect, and Lori Marco for legal issues.

Unitherm took the deposition of Lori Marco with respect to the legal facts and issues. However, Hormel failed to identify any specific scientific experts and its engineers and R&D personnel likely involve hundreds of individuals.[3] These scientific experts framed Mr. Ettinger's explanation to Unitherm as to why the JDA was terminated, and thus Unitherm is entitled to know the individuals involved and the facts discussed between them and Mr. Ettinger. The less intrusive discovery methods have proven fruitless for Unitherm. Unitherm has been unable to clearly ascertain Hormel's position relating to Mr. Ettinger's assertions. Therefore, Unitherm is entitled to take the deposition of Mr. Ettinger with respect to his August 2014 letter and to clearly understand his role in the bacon project during the course of the JDA.

This is especially true since there is a limit of twelve depositions per party in this action. *See* Pretrial Scheduling Order [Dkt #35]. In the parties' Scheduling Conference with this Court, Unitherm expressed its belief that due to the size of Hormel and the number of Hormel employees involved in various aspects of the bacon project, more than

---

[3] Unitherm is unaware of the current number of employees in Hormel's R&D department in 2015. However, in 2010, a Hormel press release noted that the R&D department was made up of "approximately 110 employees." *See Hormel Foods Named R&D Team of the Year*, HORMEL FOODS, http://www.hormelfoods.com/Newsroom/Press-Releases/2010/07/20100714 (last visited September 30, 2015).

twelve depositions would be necessary. In fact, in the Joint Status Report [Dkt #33], Unitherm requested twenty-five depositions. Hormel countered with the low number of six depositions per side. The Court determined the limit would be twelve. As discovery has continued, Unitherm has identified more than fifteen necessary deponents, but has limited itself to the twelve it believes are most vital. Mr. Ettinger is one of these twelve. Hormel cannot continually attempt to limit the number of depositions while also opposing Unitherm's attempts to take vital, relevant depositions within the confines of the limitations found in the Court's Pretrial Scheduling Order.

Unitherm has demonstrated that this is not an attempt to harass Hormel or Mr. Ettinger; to the contrary, Mr. Ettinger is one of the persons with direct and substantial knowledge that can only be provided by him. All other avenues have been exhausted, as other deponents have not been able to testify to this information, and it has not been provided during written discovery. Unitherm has already expressed its intent to limit the deposition to two hours in order to focus on the information that is unique to Mr. Ettinger. There is no legitimate basis to deny the deposition. This Motion to Compel should be granted.

### III. CONCLUSION

Hormel's decisions during the course of the JDA, the decision to terminate the JDA, and the value of the Unitherm spiral oven to Hormel are issues critical to this litigation. Mr. Ettinger possesses unique, first-hand knowledge on each of these issues, and Unitherm had been unable to ascertain this information from other less intrusive means of discovery. Hormel's attempt to avoid the deposition is less about trying to

protect Mr. Ettinger than it is about trying to protect itself from having to give up this relevant information. Therefore, Unitherm requests the Court grant Unitherm a two-hour deposition of Mr. Ettinger that will occur at his legal counsel's office in Minnesota.

**BASSFORD REMELE**
*A Professional Association*

Dated: October 1, 2015   By:  s/ Mark R. Bradford
Edward F. Fox (License #003132X)
Mark R. Bradford (License #335940)
Jeffrey R. Mulder (MN #389205)
33 South Sixth Street, Suite 3800
Minneapolis, Minnesota  55402-3707
Telephone:  (612) 333-3000
Facsimile:  (612) 333-8829
Email:  efox@bassford.com
           mbradford@bassford.com
           jmulder@bassford.com

AND

J. Christopher Davis, Esq.
Paul D. Kingsolver, Esq.
JOHNSON & JONES, P.C.
Two Warren Place
6120 South Yale, Suite 500
Tulsa, Oklahoma 74136
Telephone: (918) 584-6644
Facsimile: (888) 789-0940

**ATTORNEYS FOR PLAINTIFF**
**UNITHERM FOOD SYSTEMS, INC.**