UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Unitherm Food Systems, Inc.,

      Plaintiff,

v.                                              Case No. 14-cv-4034 (JNE/BRT)
                                               ORDER
Hormel Foods Corporation and
Hormel Foods Corporate Services, LLC,

      Defendants.

This matter is a contract dispute between Plaintiff Unitherm Food Systems, Inc. (Unitherm) and Defendants Hormel Foods Corporation and Hormel Foods Corporate Services, LLC (Hormel). It is before the Court on Unitherm's motion for partial summary judgment and Hormel's motion for summary judgment.[1]

## BACKGROUND

Unitherm is in the business of developing processes and equipment for cooking meat. Hormel is a manufacturer and marketer of brand-name food and meat products. Unitherm's owner, David Howard, invented a process for cooking sliced bacon in a spiral oven (the Unitherm Process). On July 20, 2007, Howard gave a presentation to Hormel. Before the presentation, the parties signed a Mutual Confidential Disclosure Agreement (MCDA), agreeing to hold certain information in confidence.

On September 25, 2007, the parties entered into a Joint Development Agreement (JDA). The purpose of the JDA was "to develop commercial ovens using high steam levels which would be exclusive to Hormel ('The Project')." Unitherm and Hormel agreed that, "[f]ollowing

---

[1] The parties have also filed several *Daubert* motions. The Court need not decide these motions to resolve the summary judgment motions. The Court will therefore deny the *Daubert* motions without prejudice.

completion of a commercially viable application of the Project, the parties will negotiate an agreement by which Unitherm will be the exclusive supplier to Hormel of equipment related to the Project for an initial period of five (5) years," with the possibility of an extension. The parties further agreed that all information shared relating to the Project would be considered confidential in accordance with the terms of the MCDA.

Unitherm filed a patent application for the Unitherm Process on January 11, 2008. That same year, Hormel agreed to lease a mini spiral test oven from Unitherm, which it later moved to a Hormel research and development facility. Hormel used the oven to test a process in which bacon is preheated with a microwave and then cooked in a spiral oven (the Hybrid Process). On April 1, 2010, Hormel sent a letter to Unitherm terminating the JDA. On August 16, 2010, Hormel purchased from Unitherm the spiral test oven it had been leasing. Approximately one year later, Hormel filed a patent application for the Hybrid Process.

In March 2012, representatives of JBT, a Unitherm competitor that also makes spiral ovens, visited the Hormel facility housing the Unitherm oven. A JBT report of the trip states that they "observed and measured the current spiral oven cooking process" with the Unitherm oven, that "JBT must now duplicate the oven conditions" in its own oven, and that Hormel would soon visit JBT "to determine if we can accurately duplicate the conditions to give them the same flavor and texture." In 2013, Hormel began to procure commercial oven equipment from JBT. In 2014, Hormel released a bacon product, Bacon1, made using the Hybrid Process.

Unitherm filed this suit in September 2014, bringing claims for breach of contract, unjust enrichment, trade secrets misappropriation, accounting, and declaratory relief. The Honorable Paul A. Magnuson dismissed the trade secrets and accounting claims on January 27, 2015.

Hormel answered and filed breach of contract and declaratory judgment counterclaims. Each remaining claim and counterclaim is covered by one or both of the summary judgment motions.

## STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To support an assertion that a fact cannot be or is genuinely disputed, a party must cite "to particular parts of materials in the record," show "that the materials cited do not establish the absence or presence of a genuine dispute," or show "that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). In determining whether summary judgment is appropriate, a court must view facts that the parties genuinely dispute in the light most favorable to the nonmovant, *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009), and draw all justifiable inferences from the evidence in the nonmovant's favor, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## DISCUSSION

**A. Unitherm's Breach of Contract Claim**

Both parties move for summary judgment on Unitherm's breach of contract claim. To prevail, Unitherm must show: the formation of a contract, performance of any conditions precedent, a breach, and damages. *See Parkhill v. Minnesota Mut. Life. Ins. Co.*, 174 F. Supp. 2d 951, 961 (D. Minn. 2000). Unitherm identifies several alleged breaches.

   *1. Termination of the JDA*

The JDA allows either party to terminate the agreement "if, after reasonably adequate development work and testing has been done, a commercially viable Project has not resulted,

upon providing at least thirty (30) days prior written notice." On April 1, 2010, Hormel informed Unitherm it was terminating the JDA because "no commercially viable results have been achieved." Unitherm argues Hormel had no basis for terminating the agreement because the parties had in fact achieved a commercially viable Project.

Unitherm points to evidence showing the Unitherm Process had produced quality bacon. This evidence, though, is irrelevant because the JDA Project concerned the development of a commercial oven, not a cooking process. The JDA defines "The Project" in its second paragraph, which states in full:

> Hormel and Unitherm would like to work together to develop an oven that uses very high (approaching 100%) steam levels for cooking. This oven process would initially be focused on producing bacon. Hormel has developed a prototype high steam level oven that produces such bacon and would like to work with Unitherm to develop commercial ovens using high steam levels which would be exclusive to Hormel ("The Project").

Unitherm argues that "The Project" is defined by the whole paragraph. However, the term falls within the period of the last sentence, indicating it refers only to that sentence. The sentence discusses developing commercial ovens, not oven processes. There is no evidence the parties developed ovens, let alone commercially viable ones. Thus, there is no evidence to undermine Hormel's stated basis for terminating the JDA.

Even if Unitherm could establish a breach, Unitherm cannot satisfy the damages element. Unitherm bases its damages theory on the JDA's exclusivity provision, which states:

> Following completion of a commercially viable application of the Project, the parties will negotiate an agreement by which Unitherm will be the exclusive supplier to Hormel of equipment related to the Project for an initial period of five (5) years. Such agreement will include provisions to govern performance and pricing of the equipment. . . . Following the initial five (5) year period of exclusivity, the parties will attempt, in good faith, to negotiate an agreement by which the exclusivity period is extended.

Unitherm argues the parties were obligated by these terms to negotiate an exclusive supplier agreement. However, "[u]nder Minnesota law, agreements to negotiate in good faith in the future are unenforceable as a matter of law." *C&S Acquisitions Corp. v. Northwest Aircraft*, *Inc.*, 153 F.3d 622, 626 (8th Cir. 1998). "[A]n agreement to negotiate in good faith in the future is not enforceable because it does not constitute the parties' complete and final agreement." *Mohrenweiser v. Blomer*, 573 N.W.2d 704, 706 (Minn. App. 1998). Under this case law, the parties' agreement to negotiate a supplier agreement is unenforceable.

Unitherm offers a few unavailing counterarguments. First, Unitherm argues it can reserve the issue of damages for trial. While the exact amount of damages may be reserved, Unitherm's breach of contract claim fails as a matter of law if Unitherm cannot establish that it suffered some cognizable damages. *See Jensen v. Duluth Area YMCA*, 688 N.W.2d 574, 578–79 (Minn. App. 2004). While Unitherm insists it can show lost profits damages through witness and expert testimony, this evidence does not affect the legal conclusion that the JDA's exclusivity provision is unenforceable. Unitherm also argues its damages are not based solely on the JDA but also come from the MCDA's remedies provision. However, that provision concerns damages from the disclosure or misappropriation of confidential information. It is not implicated by Hormel's decision to terminate the JDA.

  2. *Failure to Provide Notice*

Unitherm also maintains Hormel breached the JDA by failing to give the required thirty days' notice. This argument fails because Unitherm cannot show damages. Unitherm was not owed any performance or obligation during the relevant thirty-day period.

   *3. Failure to Share Information*

The JDA provides that "Hormel and Unitherm shall share information and ideas to assist in the development of the Project," and that they "agree to promptly communicate to each other the status of developments arising from the work." Unitherm argues Hormel breached this obligation to share information when it did not inform Unitherm about: (1) the use of Unitherm's oven to test microwave preheating; (2) the results of Hormel's taste panel testing of bacon produced by the Unitherm Process; (3) Hormel's work and talks with JBT; (4) Hormel's use of Unitherm's oven for a demonstration to Costco; (5) Hormel's preparations for a patent application; and (6) Hormel's use of the oven after terminating the JDA.

Two of these items, the post-termination use of the oven and the patent application preparations, took place after the JDA was terminated, at which point there was no obligation to share information. Similarly, for the demonstration to Costco, Unitherm points to no evidence that it took place while the JDA was in effect. Unitherm cites to an exhibit consisting of a printout of slides discussing Costco's plans to tour Hormel's facility. These slides are dated "12.2011," which was more than one year after Hormel terminated the JDA. Regarding Hormel's talks with JBT, the JDA did not obligate Hormel to share with Unitherm the status of its work with other companies. As for the Hybrid Process and the testing of the Unitherm Process, Hormel was only obligated to share information regarding the JDA Project, which, as discussed above, concerned the development of ovens. Hormel did not have to share information regarding the development or comparison of cooking processes. Even assuming Hormel was obligated to share information about any of the above items, Unitherm has not adequately explained how any failure to share caused cognizable and non-speculative damages. Accordingly, this aspect of the breach of contract claim fails too.

*4. Disclosure and Reverse Engineering of Confidential Information*

The MCDA restricts the disclosure of confidential information and prohibits the reverse engineering of confidential prototypes or other materials. Unitherm alleges Hormel breached these restrictions when, in 2012, it allowed JBT to examine the Unitherm oven and Unitherm Process, gave JBT data on conditions in the oven, and directed JBT to duplicate the oven conditions.[2] Whether this conduct breached the confidentiality agreement depends on whether the Unitherm Process and the Unitherm oven were protected confidential information, because the MCDA only restricts the disclosure and reverse engineering of confidential information.

The Unitherm Process became public when Unitherm's patent application was published on July 16, 2009. The MCDA specifically does not apply to information that "is or becomes public knowledge through no breach of this Agreement." Thus, the Unitherm Process was not protected confidential information at the time of the alleged breaches.[3]

With respect to the oven, the MCDA requires the parties to identify their confidential information, though "[t]he failure of either Party to mark any tangible or intangible information as Confidential Information shall not give the other Party the right to treat such information as free from the restrictions imposed by this Agreement if the circumstances would lead a reasonable person to believe that such information may be Confidential Information." In this case, there is no evidence the oven was marked as confidential. Whether it should be treated as

---

[2] Although these alleged breaches occurred after the JDA was terminated, the MCDA protects confidential information for five years from the date of disclosure. Hormel's conduct occurred within five years of Unitherm's July 2007 presentation to Hormel.

[3] Unitherm argues the "public knowledge" exception to the MCDA does not apply because it was forced to file the patent application after Hormel breached the MCDA by disclosing confidential information to JBT. The evidence does not support this assertion. Unitherm relies on a letter discussing a July 11, 2007 disclosure of information from Hormel to JBT. Hormel and Unitherm had not yet entered into their confidentiality agreement on July 11, 2007, and thus this disclosure to JBT could not have breached that agreement.

confidential thus depends on the circumstances. It is undisputed that, by the time of the alleged breaches, Unitherm had marketed the oven and displayed the exact oven at issue at a trade show. It is also undisputed that Hormel owned the oven, a factor strongly indicating the oven was not Unitherm's confidential information. Indeed, the position that the oven could remain Unitherm's confidential information after Unitherm sold it to Hormel is at odds with the MCDA. The MCDA states: "The Parties acknowledge the Confidential Information each receives from the other is the property of the Discloser and the Recipient has no claim of ownership to the Discloser's Confidential Information." Thus, if the oven was Unitherm's confidential information, Hormel, as the recipient of that information, would have had no claim of ownership. However, it is undisputed that, after August 2010, Hormel owned the oven outright. On these circumstances, the Court finds that the oven was not Unitherm's confidential information at the time of the alleged breaches. The conditions in the oven at that time were likewise not protected confidential information. Accordingly, the breach of contract claim fails.

### B. Unitherm's Unjust Enrichment Claim

Unitherm brings an unjust enrichment claim in the alternative to its breach of contract claim. "Unjust enrichment is an equitable theory which cannot be asserted where the rights of the parties are governed by a valid contract." *Holiday Hosp. Franchising, Inc. v. H-5, Inc.*, 165 F. Supp. 2d 937, 941 (D. Minn. 2001). Thus, to the extent Unitherm's claim is based on conduct governed by the JDA, the claim fails. To the extent the claim is based on Hormel's disclosure of confidential information and reverse engineering of the oven, which occurred after the JDA's termination, the claim fails because the parties' conduct was still governed by the MCDA. Finally, to the extent Unitherm's unjust enrichment claim is based on the allegations that Hormel stole the Unitherm Process, the claim fails because it is based on the same operative facts, and is

therefore preempted by, Unitherm's dismissed claim under Minnesota's Uniform Trade Secrets Act. *See* Minn. Stat. § 325C.07(a) (stating that the Act "displace[s] conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret"); *Micro Display Sys., Inc. v. Axtel, Inc.*, 699 F. Supp. 202, 205 (D. Minn. 1988) ("To the extent a cause of action exists in the commercial area *not* dependent on trade secrets, that cause continues to exist.").

Unitherm repeatedly points out that its unjust enrichment claim was allowed to survive Hormel's motion to dismiss. However, the Court must now examine the claim in light of the record at summary judgment. To survive summary judgment, Unitherm must show the unjust enrichment claim is based on conduct that was not governed by an agreement between the parties and not based on the same facts as its dismissed trade secrets claim. Unitherm has not done so.

### C. Hormel's Breach of Contract Counterclaim

Unitherm moves for summary judgment on Hormel's counterclaim alleging Unitherm breached the JDA by failing to assign ownership of the Unitherm Process to Hormel. Hormel insists it owns the Unitherm Process because the JDA provides that Hormel will own all "Inventions," a term defined as "all discoveries, improvements, know-how, and ideas . . . relating to the Project developed after the effective date of this Agreement." Hormel has not shown that the Unitherm Process meets this definition. Hormel has not explained how the Unitherm Process relates to the Project, which Hormel correctly points out was about the development of a commercial oven and not a process. Moreover, it is undisputed Howard conceived of the Unitherm Process before the JDA's effective date. While Hormel has evidence showing it provided insights to support Unitherm's patent application for the process, Hormel does not point

the Court to any specific improvement in the process that was developed as part of the Project.[4] Accordingly, Hormel has not shown it owns the Unitherm Process, and its breach of contract counterclaim fails.

### D. The Unitherm Process

Hormel seeks a declaratory judgment that it owns the Unitherm Process. Both parties move for summary judgment on Hormel's claim to own the Unitherm Process. The claim fails for the same reasons Hormel's breach of contract counterclaim fails.

### E. The Hybrid Process

Both parties have declaratory judgment claims asserting ownership rights over the Hybrid Process. Hormel seeks summary judgment on both parties' ownership claims. The Hybrid Process consists of preheating bacon with a microwave before cooking it in a spiral oven. Neither party has shown that the process was covered by the JDA, which concerned the development of a commercial oven and not a cooking process. Each party, though, insists that it developed, and thus owns, the process. Hormel asserts it developed the process without input or involvement from Unitherm. Unitherm disputes this assertion and points to Howard's deposition testimony that, during the July 2007 presentation to Hormel, Howard presented the idea of preheating bacon with a microwave before cooking it in a spiral oven. Because of this factual dispute, summary judgment on the issue of which party owns the Hybrid Process is inappropriate.

---

[4] The JDA also assigns to Hormel ownership of "Joint Inventions" and "Project Inventions," which are particular types of "Inventions" defined in the JDA. Hormel likewise has not shown that the Unitherm Process meets the definition of these terms.

## CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Unitherm's Motion for Partial Summary Judgment [Docket No. 200] and Hormel's Motion for Summary Judgment [Docket No. 215] are GRANTED IN PART and DENIED IN PART consistent with this Order and with the following result:

    a. Unitherm's breach of contract and unjust enrichment claims are DISMISSED WITH PREJUDICE.
    b. Hormel's breach of contract counterclaim is DISMISSED WITH PREJUDICE.
    c. Hormel's declaratory judgment counterclaim is DISMISSED WITH PREJUDICE to the extent it claims ownership of the Unitherm Process. The claim remains unresolved to the extent it claims ownership of the Hybrid Process.
    d. Unitherm's claim for declaratory relief remains unresolved.

2. Unitherm's and Hormel's *Daubert* Motions [Docket Nos. 206, 210, 218, 223, and 227] are DENIED WITHOUT PREJUDICE.

Dated:  July 25, 2016

s/Joan N. Ericksen

JOAN N. ERICKSEN
United States District Judge